Case No. 19-2402 Valiant Pharmaceuticals v. Mylan Pharmaceuticals Mr. Steinbler Thank you Judge Newman and may it please the court. The district court erred in ruling that venue was improper under 1400B because the act of infringement defined in 271E2 is a nationwide act that occurs in every district in the country including New Jersey. That can be seen in two ways which I'll address. The first is that the Hatch-Waxman Act artificially treats the post-approval acts of making, using and selling the ANDA product as having been committed pre-approval with the submission of the ANDA. And of course those acts will occur nationwide. The second Mr. Steinbler, just to clear the air to start, is there any question about personal jurisdiction in New Jersey? No. For any of the subsidiaries or however it's treated? There has been no issue raised at the personal jurisdiction. Okay. So it's agreed that personal jurisdiction is available? There has been no contest to personal jurisdiction. So the only thing that's been addressed is venue. Personal jurisdiction is waivable if not raised in a motion, correct? In a Rule 12 motion? Right. And it was not. Okay. So again, I've got these two points to address. The first is about the Hatch-Waxman Act artificially treating these post-approval acts of selling the product as having been committed pre-approval. The second is that the act of infringement occurs nationwide because the ANDA is purposely directed nationwide. So as to the first, Hatch-Waxman artificially treats those future acts as having been committed with the submission of the ANDA. That, of course, is precisely the subject matter that courts adjudicate in Hatch-Waxman cases. How do you get to that? I mean, when the Supreme Court said that 271E2 creates an artificial act of infringement, it was simply referring to the act of infringement that 271E2 defines as an act of infringement, which is a submission. And the submission that occurs at time one, that doesn't say that this time one act of infringement, namely the submission, is treating the yet-to-occur-but-hoped-for future acts as having occurred at time one. Let me give two answers to that. The first is that 271E2, as we know, provides a grant of jurisdiction for courts to adjudicate whether the ANDA product would infringe if it was approved and marketed. And as we know, that's a hypothetical analysis. My submission is that it's conceptually treating those commercial manufacture use and sale of the product as having occurred with the submission. How do we know that? We know that because the text of the statute says so. When a court does this hypothetical infringement analysis under 271E2, if it finds the patent is valid and infringed, the remedies provision of 271E4 states that the ANDA product can't be approved until the expiration of the patent which, quote, isn't it possible that what they're talking about in terms of the has-been-infringed is the fact that normally infringing acts, which would include all the activity leading up to the ANDA, are deemed non-infringing by statute. And so then by the filing, those infringing acts are basically revived as past infringement. But that's not the act of infringement that is adjudicated in Hatch-Waxman cases under 271E2. The acts of infringement that are adjudicated in Hatch-Waxman cases under 271E2 is whether the commercial manufacture, use, and sale of the product would infringe a valid patent. The statute's treating infringement by making, using, and selling the ANDA product, which is what courts adjudicate in Hatch-Waxman cases, as having happened in the past. And the second point here, Judge, is that the 271E2 act of infringement is not ever been narrowly limited just to the physical act of submitting the ANDA. The court made that point crystal clear in Glaxo v. Nova Farm, where it said the patentee's burden of proving ultimate infringement is not met by the filing of the ANDA. And of course that's true. The act of infringement that courts have been adjudicating for 30 years in ANDA cases is whether the proposed acts of making, using, and selling the ANDA product would infringe the patent. The court has consistently held that it is wrong to view the physical act of filing an ANDA as the totality of the act of infringement defined by 271E2. Let me ask you this, counsel. So you're conceding that we have to find something that constitutes past infringement under 1400B? There's no question. The 1400B and what it means, it requires a completed act of infringement. That completed act of infringement is the submission of the ANDA. The only question that is open here, the question to be decided, is what does that include and where does it occur? And the 271E2 text itself says the act of infringement is not just a physical act of submitting it, it's submitting an ANDA for the purpose of seeking to engage in those acts. So that's precisely why the Supreme Court described 271E2 as an artificial act of infringement because it artificially treats those future acts, making, using, and selling the product, as having occurred nuke pro tunque with the submission of the ANDA. The problem I have with that is that it seems to me that it's just a very, very strained way of talking to say that things that haven't yet happened are treated as having happened. There's a perfectly straightforward way of understanding why the E2 act of infringement is artificial because it's really quite unlike every other act of infringement in 271. It doesn't involve making, selling, offering, using, etc. But that still doesn't mean, even with the fact that that act goes a long way toward promising a future act, it doesn't mean that the future act is passed. But the act of infringement that's actually litigated in Hatch-Waxman cases includes those future acts of making, using, and selling the product. And there's no reason to construe 271E2 differently for venue than it is for infringement in every Hatch-Waxman cases. But that's point one. There's a separate point. Can I just double check? And I spent some time looking for this, and I guess I haven't found it, so maybe you have found it. That is, I was looking for, taking as a given, which has been the law for, I guess, 35 years or something, that the subject matter of the Hatch-Waxman case is whether there would be infringement if the end approval comes forward and the product was marketed. Is there some specific language in the statute that says that judging the hypothetical acts, what would happen if all this goes forward, is treated as having occurred? Some past tense type language referring to the hypothetical? I was not able to find any. So, as I said, the 271E4 Remedies section says if you adjudicate what is adjudicated in Hatch-Waxman cases, this very subject matter that you described, Judge, then you can't get approved until the patent expires that, quote, has been infringed. That's past tense. Has been infringed. And, of course, the whole notion here... Right, but the problem with that language is that it refers to the expiration of the patent that has been infringed under paragraph 2C, which just refers back to this, the filing definition, doesn't it? But the 271E2 doesn't just refer to the filing definition and has never been understood to just be the physical act of submitting an ANDA. 271E2 has this purpose language. It's submitting an ANDA for the purpose of seeking approval to engage in these acts. That's the connection. The statute, if you understand the statute as a whole, it's artificially treating those acts as having occurred with the ANDA. That's what's being adjudicated in Hatch-Waxman cases. But there's a separate ground that you can think about this as to why it's a nationwide act, which is because it is purposely directed nationwide. That's what the court held in Accorda. An ANDA is purposely directed to every district. But that purposely directed language relates to personal jurisdiction, right? Not to venue. It was decided in the context of personal jurisdiction. But I would also note that in Accorda, in the concurring opinion, Judge O'Malley writes, the act of infringement, which the Supreme Court has called highly artificial, is nonetheless a defined and very real act of infringement that takes place wherever the ANDA filer seeks to market its product. That's footnote two. Now, this court has interpreted other acts of infringement, sale and offer for sale, as occurring where they are purposefully directed. That's the Transocean and North American Phillips cases, among others. In Transocean, the court held that a contract for sale is a sale and that it occurs at the location of the anticipated future performance specified in the contract. A contract for sale that called for delivery of performance in the U.S. is a sale that occurs in the U.S. Transocean also held that an offer for sale occurs at the location of the proposed future sale. The focus, the court said, should not be on the location of the offer, but rather on the location of the future sale that would occur. In North American Phillips, the court said a sale has both a physical and a conceptual dimension. And it held, therefore, that a sale occurs in multiple places, including at the location of the buyer to which the sale is directed. So you're saying the filing of an ANDA is akin to an offer for sale? I'm saying the filing of an ANDA is akin to a sale. It's akin to a contract for sale. It's akin to an offer for sale. It's purposely directed and should be understood to occur where it's purposely directed. The submission of the ANDA has both the physical and this conceptual dimension. It's not just the mechanical act, the physical act of submitting an ANDA. And I would submit that following this court's precedent in Accorda, Transocean, and North American Phillips, the filing of an ANDA is an act of infringement that occurs nationwide where it's purposefully directed, just like a sale, just like a contract for sale, just like an offer for sale. And that should dispose of this question. Now, one last quick point. Construing 271E2, an act of infringement to just the physical location from which the ANDA is submitted, would have serious practical consequences. It would make it impossible in many hash waxing cases to have all of the defendants consolidated in one court. Well, not impossible. You'd have to use 1407, right? But 1407 still has trials in separate courts. And that's a problem. We had 19 defendants in our case, which is not untypical, all in New Jersey. And now, because of the district court's ruling, we've got some cases consolidated in New Jersey, a separate case with a mile in defendants in West Virginia. We have two discovery schedules, two claim construction proceedings, two separate trials in two different courts, all for the same patents and the same reference product. Well, you are long in West Virginia, aren't you? Just say that one more time, please. I said, aren't you pretty far along in West Virginia before Judge Keeley? We have not gotten to claim construction yet. Oh, okay. Okay? But Congress has shown its intention to have the opposite result. In the America Invents Act, Congress exempted hatchwaxman cases from the new rules prohibiting consolidation of patent cases. Congress made clear that hatchwaxman cases are a unique category. They should be able to be consolidated in one court. And that cuts against the notion that Congress intended to limit venue in hatchwaxman cases to just the district where the generic company decides to have somebody press a button to submit the end. Because if the generic can pick and choose venue that way, it makes it much more likely that you'll have hatchwaxman cases splintered in different courts, like we have in our case. Congress showed the opposite intention in the AIA, and 271E2 should be interpreted in that light. So I'll stop here, unless the court has additional questions. Reserve the rest of my time, and I'd like to rest on our papers. I think it's sufficient for this other question on appeal regarding the district court's dismissal of the foreign defendant. And we'll see if there are any more questions for counsel at this point. Judge O'Malley? No, thank you. All right, then we'll hear from Mr. Johnson. Thank you, Your Honor, and may it please the court. This is a straightforward case under black-letter rules of statutory interpretation. The key statutory phrase is, has committed acts of infringement. It's undisputed that has committed, looking backward in time, to completed acts. We heard it today, and it's in both their opening and reply briefs. It's undisputed that the only completed act of infringement alleged here is submission of the ANDA, an actual physical act with a place. And it's undisputed that that place is not New Jersey. It was prepared and sent from West Virginia to Maryland. So what does Valiant say? It says submission of an ANDA is a nationwide act. But look at the intellectual gymnastics you have to buy to get there. This is actual language straight from their brief. Congress intended to treat the proposed acts of making, using, and selling the drug as having already been committed, even though they have not yet actually occurred. The infringement that will occur is treated as having already occurred. The acts of infringement the defendant has committed include the future acts that the ANDA filer will take, contemplated acts, plans acts. We're told to look at the conceptual acts rather than the physical acts. As Judge Toronto's question suggested, that is a very strained reading of 1400B. Valiant is asking you to treat the future as the past. But that's not how Congress wrote the statute. And this court and the Supreme Court have both repeatedly affirmed that it should be interpreted according to its terms. ZTE called it an intentionally narrow statute. Are we supposed to interpret both of these statutes together? I mean, shouldn't we assume that Congress, when it set up the Hatch-Waxman scenario, was attempting to define past acts of infringement broadly? Of course, Judge O'Malley. You have to read acts of infringement as well as has committed. But they're seeking to divorce the acts of infringement idea from the verb tense language of 1400B. And there's nothing anomalous about the result below, particularly when 271E2 is read in light of 271E1. And I think your question got at that a bit. Congress obviously wanted to get generic drugs into the market fast. So it created a safe harbor for prelaunch activities that might otherwise infringe, like R&D or manufacturing. But it also wanted to speed up the litigation. So it treated the submission of the ANDA as an act of infringement, as a substitute for the prelaunch activities that are covered by the safe harbor. What's your response to the 271E4 argument, which is that once the court issues an order that if they find that the patent is valid and infringed, then even though no actual sale has occurred, they deem it to be infringed and they deem the generic to be an infringer? Your Honor, the remedies language of 271E4 strongly supports our position. And I would direct the court to subparagraph C, which says the following. Damages or other monetary relief may be awarded against an infringer only if there has been commercial manufacture, use, offer to sell, or sale. So the remedies provision of the act says those things are not treated as having occurred. Yes, there's a hypothetical aspect of this. Of course, you're asking whether the product described in the ANDA would infringe if marketed. But Mr. Steinler keeps saying it's akin to a sale. It's really much more akin to the prelaunch activities that are covered by the safe harbor. What's your answer, counsel, to the general assumption that the remedy is that the FDA, in such case, will not approve the product for sale rather than proceeding for a specific ruling on sale and the details of sale and infringement? No, of course, Your Honor. The plaintiff, in that case, if they prevail, they get injunctive relief and it prevents the approval until the expiration of the patent. But if you're asking, Congress defines the act of infringement in this context as the submission of the ANDA. And the purpose language of the statute, I would note, is not as broad as they're characterizing it to be. It says if the purpose of such submission is to obtain approval to engage in commercial manufacture, use, or sale. So the purpose is actually a limiting condition, but the act of infringement is the submission of the ANDA. And there's no requirement that one have the purpose of selling in any particular market, let alone nationwide. Obviously, if there were no purpose to sell anywhere, then there probably wouldn't be enough of a dispute to support Article III jurisdiction. But the statute, their assumption is that, well, you have to have nationwide sales to support Article III jurisdiction, and that's just not the case. Let me ask you this. Assuming that we agree with you up to a point, that it's the ANDA that triggers the infringement, does that include sweeping in any location where any prefiling activity, which would have been infringing, occurs? No, Your Honor. I think, and if I could explain it this way, I think you've got a spectrum of what the act of submission could include, potentially. At one end of the spectrum, I would say it's clear that it cannot include anything that's described in 271E1. And that refers to uses reasonably related to the development and submission of the ANDA. So we know that that's part of the safe harbor. At the other end of the spectrum, the submission, the act of tendering or presenting the ANDA to the FDA, I think is considered the act of infringement. So why isn't Maryland the only jurisdiction that these cases could be heard? Well, I think, Your Honor, we don't dispute, Your Honor, that the submission, it went from West Virginia to Maryland, and that the submission occurred in Maryland. But there's no dispute that nothing happened in New Jersey. And there's no dispute that all the preparation activities and so forth happened in West Virginia, which is not an arbitrarily chosen place. It's been Mylan's headquarters since 1961. So indulge me. So under your theory, what would be all the possible places where the filing occurs other than Maryland? So what I was getting to, Your Honor, is in between the 271E1 stuff, that's clearly not the act of infringement, and the submission, is stuff related to the preparation of the submission. At least one district court, the Galderma case in the Northern District of Texas, has said that the submission includes that preparation. I'm not sure that's the most natural reading of the statute. I think the more natural reading of the statute is that the submission is, you know, where it's sent, whether that's via U.S. mail or electronically and where it's received. You could analogize it to mail or wire fraud. I think some courts have held that that occurs where it's sent and where it's received. But it's not, you know, every conceivable place in interstate commerce. And here, it's undisputed that nothing happened in New Jersey. So, you know, you could... Well, help me understand because I don't, you know, obviously I don't work in the pharmaceutical field. But so when, under Galderma, if there could potentially be, obviously the court thought there could potentially be more than one place where it's prepared. So what goes into the preparation of the ANDA? Well, so it clearly can't be interpreted to be the R&D and the manufacturer and the bioequivalence work and things like that because that's covered by the safe harbor. I think of the preparation as, you know, essentially the preparing of the paperwork as opposed to simply the hitting send or putting it in the mail. You don't need to decide that issue in this case because it's undisputed that everything here happened in West Virginia and nothing happened in New Jersey. But in theory, the submission could potentially extend to the preparatory activities in the paperwork, filling out the forms, et cetera. Can I ask you this question? So Hatch-Maxman's been around for, what, three and a half decades. Why has this venue question not arisen in all that time? Well, I think the principal reason, Your Honor, is because now the focus is on the second prong of 1400B after T.C. Heartland. As you know, T.C. Heartland overruled V.E. Holdings, which said you could have venue any place there was personal jurisdiction over the defendant. Now that that's not the law and resides under the first prong of 1400B, means the place of incorporation, then obviously now there's a reason that there's a focus more on the second prong, both on the regular and established place of business piece and on the active infringement piece. But to come back to my point about 271E1, and it's really much more akin to look at the filing of the N as akin to prelaunch activities, if the plaintiff in a non-Hatch-Maxman case sued to stop R&D or manufacturer, they would not be able to come into court and say, oh, well, we think the defendant is going to sell in these other states, so there's venue there. The active infringement would simply be the manufacturer or the R&D. And so the and the submission is really quite analogous to that. There's nothing at all unusual about it. Now, Mr. Steinler has spoken as well about the Transocean and North American Phillips cases, which were not mentioned in the opening brief. I would suggest those arguments are forfeited. But regardless, they don't carry the day. The North American Phillips case is a personal jurisdiction case involving sales. As the court's aware, personal jurisdiction is ultimately about the fairness of being hailed into court in a given state. It's judge-made law. It's somewhat subjective to determine, is it ultimately fair to have the defendant being sued here? But it's most importantly, and the court in Accorda specifically acknowledged this, it's not constrained by the specific statutory language of the venue statute. And the Supreme Court and the Federal Circuit, this court, have both repeatedly held that 1400B does not get a liberal construction. The idea of conceptual acts of infringement is foreign to the idea of venue. And it's not as though this is a case where there is no venue anywhere, and you have to turn to some sort of concept like that to find venue somewhere. The Transocean case was not a venue case either. Nor was it a 271E case. It was an offer to sell or sale case. And the court simply read within the United States to modify sell, not offer. Nothing in the case suggests that sales are a nationwide act. To the extent it talks about sales, it talks about the place of performance. But this is not a sales case. This is a 271E2 case. And all of those future activities are not before the court. And the language of 271E2 does not permit them. Notice 1400B permit them to be before the court. Do you agree on the sort of practical point that was made, that the most efficient form of consolidation, which has been taking place for decades, is now very much limited in its availability if you were to win here, because you would have only pretrial consolidation? I don't agree that it's as stark as they presented. This is, yes, admittedly, consolidation in joiner can be a bit more challenging with this. But it's undisputed, and this court's decision in EMC holds, that you have to have proper venue to join or consolidate. Those are independent requirements. And I would note that Milan's made every effort to coordinate deadlines and events with the defendants that are consolidated in the District of New Jersey as Judge O'Malley's question indicated. There's still the potential to use 1407. But regardless, the fact that there might be an independent venue requirement and that consolidation might become a slightly higher hurdle doesn't allow rewriting the second prong of 1400B to look forward in time when Congress used a verb tense that looked backward in time. I'm happy to take any further questions. The only thing I would say on the alternative ground is that I would direct the court to paragraph 29 of their complaint, which specifically alleges that it was Milan Pharmaceuticals that submitted it, and in this case there's nothing that would overcome the presumption of corporate separateness to pull in MLL or even MI. Yeah, that's a good point. Let me ask you about that. The problem is that how can the judge really decide that question? I think the judge did decide it. He didn't spell out all the steps in his reasoning, unfortunately. But the findings about the record are in the opinion. If you look at pages five to six, he says that the plaintiffs here can't show that these other corporate defendants were involved in this, and that is, of course, the basis for this argument. But how do you make that determination on a 12B motion that relates to venue? Well, I would start with paragraph 29, which is on page 153 of the appendix, which says this is the only paragraph of the complaint that addresses Milan's infringing ANDA submission. It says, upon information and belief, Milan Pharmaceuticals filed their cause to be filed with the FDA, ANDA number 212064. Now, there are some what I would consider not plausible and conclusory allegations that kind of lump all three defendants together, but the record is undisputed that only MPI submitted the ANDA, and to the extent that you're wondering, well, did they get to dispute that, I mean, that's the very provision of the affidavit that matters for venue purposes. So I think it's clear that they had both an opportunity and an obligation to rebut it if it weren't true. Okay. Any more questions for Mr. Johnson? No. Thank you, Your Honors. We urge the Court to affirm. Okay. Thank you. Mr. Steinberg, you have three minutes for rebuttal. Thank you, Your Honor. Let me just make three quick points. The first is with respect to this question of whether we should be considering pre-launch activities, pre-launch activities are not what's litigated in Hatch-Waxman cases. As Judge Sharando had said, the subject matter that's litigated in Hatch-Waxman cases under the 271E2 grant of jurisdiction is whether making, using, and selling the product post-approval would infringe a valid patent. And it is our submission that we should be interpreting that act of infringement consistently for infringement and for venue and for personal jurisdiction as well. That's point one. Point two, with respect to the damages provision of 271E4C, that only happens in the unusual case if the ANDA has been approved and the generic has launched. In the normal case, there's never going to be an actual act of infringement. There will never be damages. And the principal issues are governed by the 271E4A and the other provisions that I mentioned, which refer to the infringement in the past tense. And then lastly, quickly, with respect to this issue about the foreign defendant, the foreign defendant is alleged in the complaint to have been a submitter. And as I think was rightly pointed out, there is no analysis. The court below said we understand venue is proper in every judicial district over a foreign defendant, but then dismissed without any explanation. And the complaint allegation needs to be accepted as true. Can I just ask that, even though this is obviously very much the tail on this case? So Milan made a motion to dismiss for lack of venue and included in that motion was also a 12B6 motion to dismiss both the foreign Milan entity and the Pennsylvania Milan entity on the ground that the only cause of action here is a cause of action for the act of infringement, namely the and defiling, and neither the Pennsylvanian or the Indian entity did that. It has nothing to do with venue. And I think that they concede that the foreign entity could not properly be dismissed for lack of venue. The question is could it be dismissed because it is clear on the face of the complaint that MLL did not commit that act of infringement. As I understand the complaint, there are two things. One, paragraph 29 says among the three Milan entities, the one that submitted is Milan Pharmaceuticals. That's paragraph 29. And then you have eight versions of the generic allocation, one for each complaint, that says Milan, which is a term that on the opening page of the complaint you say is going to hereafter be referred to the three entities collectively submitted or caused to be submitted the and. It seems to me quite literally true to say that collectively Milan submitted it if the Milan Pharmaceuticals did. Why does that not mean that on the face of the complaint, there is no allegation that the Indian entity submitted and therefore committed an act of infringement, which is relevant only to 271E2. Satisfying 271E2 has nothing to do with venue. The short answer is that by defining Milan to be all three of those entities, the complaint is alleging that all three of those entities were submitted on its face. And that's not something that can be addressed in a rule. It has to be assumed to be true for purposes of a Rule 12 motion, and it cannot be addressed in a Rule 12 motion. So there are conflicting allegations in the complaint, and we're supposed to ignore one of them and just focus on the other one? I don't think they're conflicting, Your Honor. I think they're supplementary to each other. That is to say, it may well be true that the American company pressed the button to submit it, but this court's jurisprudence on who is a submitter and involved in the preparation of that is what the allegation is here, that the Indian entity was involved as a submitter. So I don't think those are inconsistent. I think those complement each other. Any more questions for Mr. Shadler? Not for me, thanks. All right, thank you. Thanks to counsel for both sides. The case is taken under submission. That concludes the argument pieces for this panel for this morning. The Honorable Court is adjourned from day to day.